IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARVEL JONES, | ) |
| Plaintiff, | ) 4:05cv3125 |
| vs. | ) MEMORANDUM AND ORDER |
| NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, et al., | ) |
| Defendants. | ) |

This matter is before the court on filing no. 42, the defendants' Motion to Dismiss, and filing no. 46, the plaintiff's Objection to the motion. The parties have filed briefs in support of the motion and objection (filing nos. 43 and 47). The plaintiff, Marvel Jones, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. He seeks monetary, declaratory and injunctive relief for deprivations of due process in connection with prison disciplinary proceedings.

The plaintiff states that the defendants were responsible for his placement in segregation beginning on May 20, 2001, on trumped up charges. The confinement was based on conjecture and suspicion created by false information provided by certain prison staff. The officers who contrived to get the plaintiff in trouble sought to punish the plaintiff rather than to elicit a true investigation into the facts. The plaintiff states that he missed work, lost wages in the amount of $48.40, suffered loss of liberty, and sustained deprivations of procedural and substantive due process. In addition, corrections staff negligently misplaced some of the plaintiff's personal property with a value of $32.47. The plaintiff also suffered emotional distress. The plaintiff's grievances indicate that state-court

1

proceedings ultimately resulted in dismissal of the original misconduct report against the plaintiff, after the plaintiff spent 19 days in segregation.

## Due Process

The plaintiff's due process claims must fail, as the Due Process Clause is not implicated in the circumstances of the plaintiff's case. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*), cert. denied, 120 S.Ct. 402 (1999).

Property Interest

The plaintiff had no property interest in his prison job or wages. For prisoners, even those pre-existing rights which remain in effect during incarceration may be curtailed in scope for penological reasons. See generally Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.").

A prisoner has no preexisting right to work in prison or to be paid for labor. Indeed, prison officials may require inmates to work without any compensation at all. See, e.g., Jennings v. Lombardi, 70 F.3d 994, 995 (8th Cir. 1995) ("[t]here is no constitutional right to prison wages and any such compensation is by the grace of the state"), *citing* Hrbek v.

2

Farrier, 787 F.2d 414, 416 (8th Cir.1986). Accord DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000) (Prisoners have no constitutional right to a prison job or to wages for work performed while in prison.). "Indeed, at common law an inmate not only did not have a property right in the product of his work in prison, but he also could be forced to forfeit all rights to personal property." Givens v. Alabama Department of Corrections, 381 F.3d 1064, 1068 (11th Cir. 2004).

The Nebraska Legislature has determined, however, that inmates in state institutions shall be employed so as "[t]o establish good habits of work and responsibility, to foster vocational training, and to reduce the cost of operating the facilities." Neb. Rev. Stat. § 83-183(1). Furthermore, such inmates shall be paid wages. The Director of DCS "shall make rules and regulations governing the hours, conditions of labor, and the rates of compensation" for inmates committed to DCS custody. Id. § 83-183(2).

"A property interest is established 'by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Thus, any property interest created by state law is limited by the DCS Director's authority (and any authority delegated by the Director) to govern the conditions of inmate employment, including to terminate employment or suspend wages while an inmate is in disciplinary segregation.[1]

---

[1] As for the negligent loss of the plaintiff's personal property, negligent conduct does not violate the Due Process Clause. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). See also Avalos v. City of Glenwood, 382 F.3d 792, 799 (8th Cir. 2004): "Mere negligence is not conscience-shocking and cannot support a claim alleging a violation of a plaintiff's substantive due process rights."

3

Liberty Interest

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope, or expectation. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459 (1989). A protected liberty interest may arise from either the Due Process Clause of the Federal Constitution, itself, or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. Lekas v. Briley 405 F.3d 602, 607 (7th Cir. 2005). See also Holly v. Woolfolk, 415 F.3d 678, 679 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process"), cert. denied, 126 S.Ct. 1166 (2006). Accord Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody."). "[T]he notion of liberty inherent in the Fourteenth Amendment Due Process Clause is not implicated by" a placement or transfer which subjects a convicted prisoner to more severe conditions of confinement, without more. Cf. Meachum v. Fano, 427 U.S. 215, 225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.").

Consequently, the plaintiff's liberty interest, if any, must emanate from state law. The plaintiff's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). "Sandin found no liberty interest

protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" Wilkinson v. Austin, 545 U.S. at 223, *quoting* Sandin, 515 U.S. at 485.

In Sandin, the Court substantially narrowed the circumstances in which a state-created liberty interest arises:

> The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum.  Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause .... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted).   Therefore, to demonstrate a liberty interest created by state law, the plaintiff must show that the protested conditions exceed the normal range and limits of custody and impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id.

However, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin." Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).   Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant

5

hardship." The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship. Id.

In Nebraska, deprivation of good-time credit implicates a liberty interest sufficient to require due process. Dailey v. Nebraska Dept. of Corr. Servs., 578 N.W.2d 869, 873 (1998). See generally Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) (when a state provides a right to good time and specifies the methods of forfeiture, an inmate has a constitutionally-protected liberty interest entitling him or her to procedures designed to ensure that the state-created right is not arbitrarily abrogated).

On the other hand, the Nebraska courts have rejected the argument that segregation alone constitutes an atypical and significant hardship giving rise to a liberty interest under state law. See, e.g., Martin v. Curry, 690 N.W.2d 186, 192 (Neb. App. 2004) (inmate had no clearly established liberty interest when prison officials extended his tentative release date from disciplinary segregation and placed him on administrative confinement). See also Thompson v. Nebraska Dept. of Correctional Services, 2002 WL 857327 at *6 (Neb. App. May 7, 2002): "Thompson has no protected liberty interest that was violated by her placement in disciplinary segregation. Disciplinary segregation alone is not an atypical and significant hardship, and Thompson does not have a state-created right that is being arbitrarily abrogated, because her good time is not affected."

Finally, the length of time the plaintiff remained in segregation is an important factor. The courts have not developed a consensus regarding how much time in segregation can be considered an atypical and significant hardship. On the outer end of the spectrum, the Third Circuit Court of Appeals held in Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000), that eight years in administrative confinement, during which the plaintiff remained locked

6

in his cell for all but two hours per week, was denied contact with his family, visits to the library and participation in any education, vocational, or other activities, clearly implicated a protected liberty interest. However, the same Court of Appeals has held that administrative confinement for fifteen months did not impose an atypical and significant hardship. Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). Similarly, in Jones v. Baker, 155 F.3d 810, 813 (6th Cir. 1998), the Sixth Circuit did not consider confinement in administrative segregation for two and one-half years an atypical and significant hardship.

In this case, the plaintiff's period in segregation was relatively short in contrast to cases in which courts have found a liberty interest warranting due process protection, and the placement in segregation had no effect on the overall duration of the plaintiff's period of imprisonment. The plaintiff had no liberty interest arising under the Due Process Clause itself or state law, and, therefore, he did not suffer a deprivation of liberty entitling him to the protections of the Due Process Clause.

THEREFORE, IT IS ORDERED:

1. That filing no. 42, the defendants' Motion to Dismiss, is granted;

2. That filing no. 46, the plaintiff's Objection to the Motion to Dismiss, is denied;

3. That the plaintiff's complaint and this action are dismissed; and

4. That judgment will be entered accordingly.

DATED this 12th day of March, 2007.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge

7